IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-01706-RBJ

SHAY CARPENTER,

    Plaintiff,

v.

SCHOOL DISTRICT NO. 1, CITY AND COUNTY OF DENVER, COLORADO,

    Defendant.

---

## ORDER

---

This matter is before the Court on defendant School District No. 1's ("the District") motion to dismiss. Def.'s Mot. to Dismiss, ECF No. 18; Supp. to Mot. to Dismiss, ECF No. 36. For the reasons below, the Court GRANTS defendant's motion.

## I. FACTS

Plaintiff Shay Carpenter is a former special education teacher at Ellis Elementary School ("Ellis")—a public elementary school located in the District. Second Am. Compl., ECF No. 33 at ¶¶6–8, 45. During the 2014–15 school year Ms. Carpenter operated Ellis' "center program" for students with learning disabilities, which is an educational program for students from around the District with autism. *Id.* at ¶8. It is also known as the "Pragmatic Learning and Executive Functioning" or "PLEX" program. *Id.* at ¶9.

Ms. Carpenter alleges that at the beginning of that school year Ellis' principal, Khoa Nguyen, began to express concerns to District administrators about the legality of the District's

newly-imposed requirement that PLEX program students spend at least 60% of their time in the program. *Id.* at ¶¶14–15. Ms. Carpenter alleges that she too began to voice her concerns about how the PLEX program was being run shortly thereafter. *Id.* at ¶¶15–16.

She alleges that she e-mailed the District Superintendent of Schools, Thomas Boasberg, on November 8, 2014 to complain about what she perceived as the "horrific state of special education" in the District region that encompasses Ellis. *Id.* at ¶18. Ms. Carpenter alleges that she also complained to Mr. Boasberg about the legality of the District's special education policy described above, which she contends was imposed by the District "in order to financially rationalize [special education students'] being transported to school each day." *Id.* at ¶19. Plaintiff also allegedly complained about the PLEX program's student-to-staff ratio. *Id.* at ¶20. Around the same time she e-mailed these concerns to Mr. Boasberg, plaintiff allegedly posted similar criticisms of the District's special education program on her Facebook page. *Id.* at ¶23.

Although he did not address Ms. Carpenter's complaints himself, Mr. Boasberg quickly responded to Ms. Carpenter's e-mail complaints by informing her that he would refer them to the District's head of student services, Mr. John Simmons. *Id.* at ¶25. Two days later on November 10, 2014 Mr. Simmons reached out to Ms. Carpenter via e-mail.[1] *Id.* at ¶26. He asked plaintiff to meet with legal support and the District's Director of Special Education so that the District could address her concerns. *Id.* Mr. Simmons also allegedly asked Ms. Carpenter about the basis for her allegations that the special education program was being run "illegally." *Id.* at ¶27. Ms. Carpenter alleges that she followed up with "specifics via e-mail over the next few days." *Id.* Despite her correspondence with Mr. Simmons, Ms. Carpenter claims that she never received a written response to her concerns about the PLEX program from any District administrators. *Id.* at ¶28.

---

[1] Plaintiff's complaint misstates this date as "November 10, 2013." *See* ECF No. 33 at ¶26.

In any event, after expressing her concerns to District administrators via e-mail Ms. Carpenter was allegedly called into the Ms. Connie Clifton's office (i.e., the Assistant Principal of Ellis) on or about November 14, 2014. *Id.* at ¶29. At that meeting Ms. Clifton allegedly directed plaintiff to "drop the issue of [a] lack of paraprofessional support[.]" *Id.* Ms. Clifton also allegedly informed plaintiff during this meeting that the District's legal team "had determined that the PLEX program complied with the [Individuals with Disabilities Education Act] and that [Ms. Carpenter] was not to use the term 'illegal' anymore" to describe the program. *Id.* Ms. Clifton then told Ms. Carpenter that Mr. Simmons had seen plaintiff's Facebook "post" and that plaintiff was also "not to say anything critical about the District on her ([Ms.] Carpenter's) Facebook page." *Id.* at ¶30. Lastly, Ms. Clifton allegedly informed Ms. Carpenter that plaintiff was to cancel a meeting that she had scheduled with parents of PLEX program students to apparently discuss her complaints about the PLEX program's legality. *Id.* at ¶31.

After this meeting Ms. Carpenter alleges that District employees took additional "retaliatory" actions against her over the next few months for her expressing these concerns. *See id.* at ¶¶32–44. First, she alleges that on December 17, 2014, roughly a month after her initial meeting with Ms. Clifton, Ms. Clifton again told her that she "was communicating with parents" of PLEX program students "more than she should have." *Id.* at ¶33. Ms. Clifton then allegedly instructed plaintiff "not to communicate 'too much' with [these] parents[,]" although she did not put this "instruction" in writing. *Id.*

Next, on December 18, 2014 Mr. Jason Thompson, another District administrator, e-mailed Ms. Carpenter to tell her that she would have to be "removed from the classroom" temporarily because she was not "highly qualified" for her teaching position under the No Child Left Behind ("NCLB") statute. *Id.* at ¶35. Ms. Carpenter alleges that before she started her job

3

at Ellis she convinced District employees that she did not need to complete the test and that the District had agreed. *Id.* at ¶10. In any event, Ms. Carpenter eventually took the test and passed. *Id.* at ¶38. The District never removed her from her teaching position during this time. *See id.*

Early the next year Ms. Carpenter's concerns about the PLEX program apparently began anew. On January 25, 2015 she e-mailed Ellis' principal and Ms. Clifton to inform them of alleged safety concerns in her classroom after one of her elementary school students "assaulted" another student and issued a death threat. *Id.* at ¶40. Ms. Carpenter alleges that she felt that "she was in a physically dangerous situation" due to "the lack of paraprofessional support at the PLEX program[,]" which she believed led to this student-on-student violence. *Id.* at ¶41. Ms. Carpenter also alleges that this same student allegedly "physically intimidated staff with scissors" at some point in time in addition to allegedly stabbing other students with pens and pencils. *Id.* at ¶42.

Apparently heeding plaintiff's concerns, the District conducted a threat assessment on the student whom committed the assault and issued the student a "one day, in school, suspension." *Id*. Ms. Carpenter nevertheless alleges that she felt that this "action" was inadequate. *See id.* She soon requested that the student's placement be changed and informed a District administrator that she would stop coming to school to teach until the District took those actions. *Id.* at ¶43. Ms. Carpenter, however, did not carry out her threat, nor was the student apparently transferred. *See id.* Ms. Clifton nevertheless informed Ms. Carpenter shortly thereafter on January 28, 2015 that plaintiff would receive a "letter of reprimand" for having made such a threat not to show up for work. *Id.* at ¶44. The District never issued plaintiff that letter, however, as Ms. Carpenter formally resigned her position three days later on January 31, 2015. *Id.* at ¶45.

Before she resigned, Ms. Carpenter filed a complaint against the District with the Department of Education's Office of Civil Rights ("OCR"). *Id.* at ¶47; *see* ECF No. 14-2 at 1 (OCR letter). In that complaint, plaintiff "alleged that the District failed to make individual placement determinations for students with disabilities in the PLEX program." ECF No. 33 at ¶47. A few months after plaintiff filed this complaint, the District entered into a Resolution Agreement with OCR wherein "the District agreed to conduct a staffing meeting for all intermediate PLEX program students" and "to provide training to Ellis Elementary Staff as to their responsibilities under Title II of the Americans with Disabilities Acts [("ADA")] and Section 504 of the Rehabilitation Act of 1973." *Id*. at ¶48; *see* ECF No. 14-2 at 2–4 (Resolution Agreement). That Agreement, however, stated that "the District's decision to enter into [the] Agreement [was] not an admission of liability or wrong-doing, nor shall it be construed as such." ECF No. 14-2 at 2.

Procedural History

After resigning from Ellis and filing a complaint with OCR, Ms. Carpenter brought suit against the District in this Court on July 5, 2016. Compl., ECF No. 1. In her initial complaint, plaintiff alleged two causes of action: (1) a claim for "retaliation" under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*; and (2) a First Amendment retaliation claim brought under 42 U.S.C. § 1983. *Id.* at 50–58. The District moved to dismiss plaintiff's initial complaint on September 12, 2016, alleging that plaintiff failed to state a claim with either cause of action. ECF No. 11. Roughly two weeks later plaintiff amended her complaint thus rendering defendant's motion "moot." ECF Nos. 14, 16.

On October 3, 2016 the District re-filed its motion to dismiss. ECF No. 18. Shortly after that motion was fully briefed, plaintiff moved for leave to amend her complaint once again. ECF

5

No. 30. Granting plaintiff's motion on March 21, 2017, the Court nevertheless instructed the parties that defendant did not need to re-file its motion to dismiss, and that both parties could file short "supplements" to their briefings on that pending motion after plaintiff filed her second amended complaint. ECF No. 32. Plaintiff's second amended complaint was subsequently docketed on March 21, 2017. ECF No. 33. It added an allegation of "unlawful prior restraint" to her First Amendment claim and a third claim for relief under § 1983 for alleged Rehabilitation Act violations. *Id*. Defendant filed its supplement to its motion to dismiss two weeks later on April 4, 2017, arguing in it that all three of plaintiff's claims should be dismissed for failing to state a claim. ECF No. 36. Plaintiff has not submitted a supplemental response during the allotted time period.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III. ANALYSIS

As mentioned above, with its supplement to its pending motion to dismiss, the District argues that all three claims contained within plaintiff's second amended complaint must be dismissed. *See* ECF Nos. 18, 36. For the reasons below, I agree.

### A. Plaintiff Failed to Sufficiently Allege Claims for Retaliation.

First, I agree with the District that plaintiff has failed to adequately state a claim that the District "retaliated" against her in violation of either the Rehabilitation Act (i.e., Claim One) or her First Amendment rights (i.e., part of Claim Two). *See* ECF No. 33 at ¶¶50–54, 55–57, 59. I address each cause of action in turn.

#### 1. Plaintiff Did Not Suffer "Adverse Employment Actions" that Could Serve as the Basis for a Retaliation Claim under the Rehabilitation Act.

To state a prima facie case for retaliation under the Rehabilitation Act, a plaintiff must sufficiently allege: "(1) that she engaged in protected activity; (2) that she suffered a materially adverse action . . . either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse action." *See Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010) (pointing out that "[t]he standard for retaliation claims under the Rehabilitation Act is the same as the standard . . . under the Americans with Disabilities Act" and that a plaintiff "may rely upon the burden-shifting framework of [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)]" when there is no "direct evidence").

Regarding the second element of pleading a "materially adverse action," the Tenth Circuit has explained that it construes this phrase "liberally," and that such action is no longer limited to "tangible" employment actions such as "monetary losses in the form of wages or benefits." *Id.* (quoting *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004)) (internal

quotation marks omitted); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (establishing that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). Thus, "[a]cts that carry 'a *significant* risk of humiliation, damage to reputation, and concomitant harm to future employment prospects' may [also] be considered adverse actions . . . ." *Reinhardt*, 595 F.3d at 1133 (quoting *Annett*, 371 F.3d at 1239) (emphasis added); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004).

However, employment actions consisting of "mere inconvenience[s] or alteration[s] of job responsibilities . . . will not suffice." *See Annett*, 371 F.3d at 1239 (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)) (internal quotation marks omitted). Neither will actions resulting in only "[s]peculative harm[s] . . . ." *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001); *see also Jeffries v. State of Kan.*, 147 F.3d 1220, 1232 (10th Cir. 1998), *abrogation in part on other grounds recognized in Zisumbo v. McCleod USA Telecomm. Servs., Inc.*, No. 044119, 154 F. App'x 715, 728 n.8 (10th Cir. 2005)) ("[U]nrealized threats or tense personal relationships do not rise to the level of actionable retaliation.").

Here, plaintiff alleges seven possible adverse actions the District took in response to her criticisms of the PLEX program. They are: (1) the District's informal directive to plaintiff to "drop" her concerns about the PLEX program and to not characterize that program as illegal anymore; (2) its instructing plaintiff not to criticize the program on her Facebook page; (3) its telling plaintiff to cancel the meeting she had scheduled to discuss her criticisms of the PLEX program with parents of PLEX students; (4) defendant's vague instruction to refrain from communicating with parents of PLEX students "too much[;]" (5) the District's requiring plaintiff

8

to take an exam to become "highly qualified" under NCLB; (6) its failing to adequately address plaintiff's concerns about her safety in the classroom; and (7) its threatening to reprimand plaintiff after she threatened not to show up for work. *See* ECF No. 22 at 4–5 (referencing ECF No. 33 at ¶¶29–31, 33, 35, 43, 44).

I find, however, that these employment "actions" were not materially adverse either individually or "in the aggregate." *See Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). Rather, to the extent these alleged actions even constituted more than informal, vague verbal reprimands, unrealized threats, or even *inaction*, they resulted in, at most, only minor alterations to plaintiff's employment at Ellis. *Compare Fortner v. State of Kan.*, 934 F. Supp. 1252, 1267 (D. Kan. 1996), *aff'd sub nom. Fortner v. Rueger*, 122 F.3d 40 (10th Cir. 1997) (holding that verbal reprimands and a letter threatening the plaintiff with possibly being held liable for damages stemming from a vehicle accident were "nothing more than mediate decisions by an employer which are far too ephemeral in nature and effect as to be considered adverse employment actions.") *with Taylor v. Bd. of Cty. Comm'rs of Adams Cty., CO*, No. 05-CV-00372-WYD-BNB, 2006 WL 2092609, at *3 (D. Colo. July 27, 2006) (holding that a teacher stated a claim for retaliation where she alleged that she was "reprimanded and slandered, was transferred to a job she could not physically perform and was not qualified for, and that she was forced to take medical leave" by her employer).

After all, the District did not prevent plaintiff from communicating with parents of PLEX students entirely or even stop her from communicating with them regularly, ECF No. 33 at ¶¶30–33; it did not prevent her from continuing to criticize the PLEX program internally, *see, e.g., id.* at ¶43; it never carried out its threat to reprimand her, which, in any event, the District only made in response to *plaintiff's* threat not to show up for work, *id.* at ¶¶44–45; and, despite requiring

plaintiff to take an exam that plaintiff was apparently able to quickly pass within a couple of weeks, the District did not ever remove plaintiff from her classroom in the interim, *id.* at ¶38.

Furthermore, because the District attached no consequences to its "actions" and because plaintiff has not alleged that she suffered any harms or damages to her reputation or future employment prospects from these actions, let alone *significant* ones, I find that, even under a "liberally"-construed standard, plaintiff's allegations come up short.[2] *But cf. Reinhardt*, 595 F.3d at 1133 (teacher's allegation that her employer falsely told the New Mexico Public Education Department "that a police report had been filed against" her constituted a "materially adverse" action "because it could damage [the teacher's] reputation and harm future employment prospects"). Accordingly, the Court GRANTS defendant's motion to dismiss with respect to plaintiff's Rehabilitation Act retaliation claim (i.e., Claim One).[3]

## 2. **Plaintiff Also Fails to Sufficiently Plead a First Amendment Retaliation Claim.**

Next, I find that plaintiff has also failed to sufficiently allege that the District retaliated against her in violation of her First Amendment rights. Under circuit precedent, the five-prong

---

[2] The only "harm" plaintiff alleges she "suffered" is that she "*potentially* . . . faced sanction against her teaching license for unethical behavior" if she merely continued to work at Ellis. ECF No. 33 at ¶46 (emphasis added); ECF No. 22 at 6. This alleged harm, however, is insufficient for two reasons. First, it is purely speculative. *See Aquilino*, 268 F.3d at 936. Second, plaintiff does not allege that this harm resulted from any retaliatory actions the District took against her. Rather, she merely alleges that this potential harm might result from the District's *inactions* more broadly. *See* ECF No. 33 at ¶46. Thus, plaintiff cannot establish any causal connection between a harm alleged and retaliatory actions taken against her by her employer. *See Reinhardt*, 595 F.3d at 1131.

[3] Plaintiff alternatively argues that the District's actions amounted to a "constructive discharge." *See* ECF No. 22 at 6; ECF No. 33 at ¶¶54, 59; *see also Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997) (explaining that in order to establish a constructive discharge a plaintiff must show that she did not have the "opportunity to make a free choice regarding [her] employment relationship"). The standard for pleading a constructive discharge, however, is far more difficult than merely pleading materially adverse employment actions, and for that reason I find that plaintiff's constructive discharge theory necessarily fails as well. *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1217 n.6 (10th Cir. 2010) ("Because [the plaintiff's] facts fail to meet the threshold required for a retaliation claim—a material adverse harm—it follows that those same facts cannot satisfy the higher threshold required for a constructive discharge claim.").

"*Garcetti-Pickering*" test governs these kinds of retaliation claims. *See Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1235–37 (10th Cir. 2009) (explaining that "certain types of less severe conduct can be the basis for a First Amendment [retaliation] claim" that might not constitute a "discrimination claim under Title VII.") (internal quotation marks and citations omitted).

That test states that in order to sufficiently plead a First Amendment retaliation claim, a plaintiff must sufficiently allege all of the following: (1) that the employee spoke "pursuant to [her] official duties[;]" (2) that "the subject of the speech [was] a matter of public concern[;]" (3) that "the employee's interest in commenting on the issue outweighs the interest of the state as employer[;]" (4) that the "speech was a substantial factor or motivating factor in a detrimental employment decision[;]" and (5) that the employer "would [not] have taken the same action against the employee even in the absence of the protected speech." *See id.* (quoting *Brammer-Hoelter*, 492 F.3d 1192, 1202–03 (10th Cir. 2007); *see also Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

As the Tenth Circuit has also explained, however, "[i]mplicit in . . . [this] test is a requirement that the public employer have taken some adverse employment action against the employee." *Couch*, 587 F.3d at 1235 (quoting *Belcher v. City of McAlester, Okla.*, 324 F.3d 1203, 1207 n.4 (10th Cir. 2003)). Thus, in addition to those five elements described above, a plaintiff must also sufficiently allege "that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in [the protected] activity." *See id.* at 1237.

Here, again, plaintiff's allegations of adverse employment actions come up short. Plaintiff's main allegation of adverse employment action in violation of her First Amendment

rights appears to be the District's informal directive to her to refrain from criticizing the PLEX program as "illegal" on her Facebook page after the District determined internally that plaintiff's accusations were incorrect. *See* ECF No. 33 at ¶¶30–33, 58.

As mentioned above, however, the District did not attach any consequences to that informal "directive" or to any of the other allegedly adverse employment actions plaintiff contends the District "took" or "threatened" to take against her. *See supra* Part III.A.1. Furthermore, plaintiff's allegations reveal that despite multiple attempts by plaintiff to get District administrators to clarify this "directive" or to even restate it for her, the District could not even be bothered to repeat it. ECF No. 33 at ¶¶36–37 (explaining that a month after plaintiff's first meeting with Ms. Clifton plaintiff repeatedly attempted to get the District to clarify or even reiterate its "directive" but that District administrators did not even respond to plaintiff's multiple requests).

To summarize, then, what plaintiff alleges is that the District exhibited an apathetic attitude towards what was an informal directive not to post on Facebook and that no concrete consequences would flow from her choosing to violate that "order." Given those allegations, I find that "a person of ordinary firmness" would not be "chilled" under these circumstances.[4] *But cf. Brammer-Hoelter*, 492 F.3d at 1208 ("While a supervisor's surly attitude would probably not deter a reasonable person from exercising his or her First Amendment rights, it is clear that poor performance ratings certainly could, especially for non-tenured teachers."); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (explaining that "[c]ontext matters" in deciding whether an employer's actions constitute "actionable retaliation"). Accordingly, the

---

[4] Although this is an objective standard, plaintiff herself appeared subjectively undeterred by the District's actions. From her allegations, it appears that she continued to criticize the PLEX program for weeks after the District first handed down this "directive." *See* ECF No. 33 at ¶33.

Court GRANTS defendant's motion to dismiss plaintiff's First Amendment retaliation claim (i.e., part of Claim Two) as well.

### B. Plaintiff Does Not Have Standing to Allege an Unlawful Prior Restraint.

Next, I find plaintiff's First Amendment unlawful prior restraint claim must be dismissed because plaintiff lacks standing to raise this claim.[5] *See* ECF No. 33 at ¶58 (alleging within her second claim under the First Amendment that the District "imposed an unlawful prior restraint on [plaintiff's] constitutionally protected right to freedom of speech"); *see also Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010) (*Brammer-Hoelter II*) ("A prior restraint claim is distinct from a retaliation claim because it is based on a restriction that chills potential speech before it happens, rather than an adverse action taken in response to actual speech.") (internal quotation marks and citations omitted).

As the Tenth Circuit in *Brammer-Hoelter II* explained, in order to have standing to assert a claim of unlawful prior restraint, a plaintiff must establish, among other things, that the plaintiff suffered some kind of injury from the employer's directive not to speak—i.e., that the restraint "actually chilled [the plaintiff's] speech . . . and . . . [that this] chilling effect was caused by an objectively justified fear of real consequences." *See id.* at 1183 (finding that a record established a potentially sufficient injury where a supervisor's "serious and angry" directive to teachers "not to speak to anyone about school matters" caused the teachers to fear that they

---

[5] The Tenth Circuit in *Brammer-Hoelter II* confronted a similar "unlawful prior restraint" claim by teachers against their former school. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1181 (10th Cir. 2010) (*Brammer-Hoelter II*). The bulk of the court's analysis on that claim concerned whether the teacher-plaintiffs had standing to sue, particularly the issue of whether there was an "injury in fact"—an issue the parties did not specifically discuss but one the court raised *sua sponte*. *See id.* Here, the parties' briefings, like those in *Brammer-Hoelter II*, do not frame the pertinent issue in terms of standing, but nonetheless address the same question the court in *Brammer-Hoelter II* dealt with—i.e., whether plaintiff's speech was actually "chilled" by the alleged prior restraints. Thus, the Court, like the Tenth Circuit in *Brammer-Hoelter II*, will *sua sponte* raise the question of whether plaintiff has standing to raise this claim. *See id.* at 1181–82.

might receive poor evaluations, which they did, or not be rehired if they violated that order, but that a mere code of conduct, which essentially gave the same directive to the plaintiffs earlier but which did not apparently alter or deter the teacher's speech, was insufficient).

Here, for largely the same reasons I describe *supra* (i.e., an apparent lack of consequences for violating the directive, the District's apathetic attitude regarding enforcement, and plaintiff's obstinacy in the face of this directive), I find that plaintiff has failed to sufficiently plead any injury-in-fact. That is, despite having multiple opportunities to amend her complaint, plaintiff makes no allegations that defendant's directive caused her to fear some sort of job-related punishment if she violated the order, or, much less, even a poor job evaluation.[6] *See Brammer-Hoelter II*, 602 F.3d at 1182. Similarly, I find that based on plaintiff's allegations, a reasonable person would not have feared any consequences from violating the District's informal directive. *See id.* Accordingly, the Court GRANTS defendant's motion to dismiss plaintiff's First Amendment prior restraint claim (i.e., part of Claim Two).

### C. The Rehabilitation Act Provides the Exclusive Means to Enforce that Law.

Finally, I find that plaintiff's third claim alleging violations of the Rehabilitation Act must also be dismissed for failing to state a claim. *See* ECF No. 33 at ¶¶60–61. With that claim, plaintiff seeks to hold the District liable under § 1983 for the same alleged violations of the Rehabilitation Act plaintiff alleges in her first claim. *See id.*

As numerous courts have persuasively held, however, in the Rehabilitation Act, much like in the ADA, Congress provided the "exclusive" means of enforcement. *See, e.g.*, *Tri–Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 448 (7th Cir. 2016), *cert. denied sub nom. Tri-Corp Hous. Inc. v. Bauman*, 137 S. Ct. 592 (2016) (explaining that "[s]ix courts of appeals have addressed

---

[6] The District allegedly threatened to send plaintiff a letter of reprimand. *See* ECF No. 33 at ¶44. However, by plaintiff's own admission, the District did not make that threat in response to plaintiff's criticisms of the PLEX program, but rather in response to *plaintiff's* threat not to show up for work. *Id.*

14

this [issue]" and that "all six" have held that § 1983 claims to enforce the Rehabilitation Act or ADA necessarily fail); *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 806 (3d Cir. 2007) ("There is nothing in Section 504 that . . . causes us to conclude that Congress intended to allow § 1983 to be available to remedy Section 504 violations . . . ."); *c.f. Faircloth v. Schwartz*, 12-CV-02764-REB-KLM, 2014 WL 4466663, at *17 (D. Colo. Sept. 10, 2014) (holding that § 1983 claims against individual defendants in their individual capacity for alleged violations of the ADA "fail as a matter of law" for similar reasons). Thus, I find that plaintiff's attempt to enforce provisions of the Rehabilitation Act through another statutory vehicle fails and that Claim Three must therefore be dismissed as well.

## ORDER

For the reasons above, the Court GRANTS defendant's motion to dismiss in its entirety. Accordingly, the Court dismisses all three claims contained within plaintiff's second amended complaint with prejudice. As the prevailing party, defendant is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 20th day of April, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge